CHEEVES vs. DANIELLY.

1. Where accord and satisfaction was pleaded, and the terms of the accord, and whether they had been complied with, were in issue, it was error to apply thereto the doctrine of estoppel, and, on the ground that it was not favored by the courts, to require a clearer and stronger degree of proof than in ordinary civil cases, and to

charge that the jury must have clear or very clear evidence on one side of the issue.

2. Where, in an action for damages resulting from digging a ditch so as to empty into a creek at a place where it injured plaintiff's land, a count for damages to the fee or permanent damages to land was not relied on, and was virtually withdrawn from the jury, it was error to charge to the effect that they could find general as well as special damages.

(a.) If the court intended to charge that the jury could find nominal damages, the charge was calculated to mislead them.

3. Where suit was brought for cutting a ditch in such manner as to turn a smaller stream into a larger one above where its natural outlet was, so as to drain land, and by pouring sand and other water into the larger stream at the artificial outlet, to cause injury to the land of the plaintiff bordering on the larger stream, in the absence of any evidence of violence, it was error to give in charge §3066 of the Code as to aggravated damages.

4. There was no error in admitting evidence to show the productiveness and dryness of the land of the plaintiff for many years prior to the cutting of the ditch.

5. There was no error in admitting evidence to show that the defendant's land was drained of water, and the acreage and extent thereof, in order to show how much more water was emptied into the stream, the course of which was changed, and thence into the larger stream, causing the alleged damage.

(a.) The value of the crops made on the land so drained was hardly admissible in evidence.

March 17, 1885.

Accord and Satisfaction. Charge of Court. Damages. Water Courses. Evidence. Before Judge STEWART. Monroe Superior Court. August Term, 1884.

To the report contained in the decision, it is only necessary to add the grounds of the motion for new trial, which were as follows :

(1.) Because the court permitted a witness to testify as to the condition of the plaintiff's bottom land from 1840 to the time it was sold to the plaintiff in 1864.—Defendant objected, on the ground that this was not the proper method of proving damage.

(2.) Because the court charged as follows · " If you believe defendant turned more water into Tobesofkee creek

than had been accustomed to flow into Tobesofkee at that point, and if you believe such act caused sand to be carried into Tobesofkee and fill the channel, if this act damaged plaintiff, then plaintiff would be entitled to recover, whether the sand went from defendant's land or from the land of any other person, unless the evidence discloses some good reason why he should not recover."

(3.) Because the court charged as follows: "Although you may believe from the evidence that the water of Yellow creek would eventually have gone into Tobesofkee at the point where defendant turned it in (if it is shown that defendant turned the water), still, if defendant turned the water in before the same, if let alone, would have gone there, and if such act damaged plaintiff, plaintiff would be entitled to recover, unless the evidence discloses some good legal reason why he should not recover."

(4.) Because the court charged, with reference to the plea of settlement or accord and satisfaction, as follows: "If such agreement was not made, or, if made, if defendant, Cheeves, has not complied with the same, or if only a partial compliance with the agreement has been made, then plaintiff would not be estopped from recovering damages, if he has been damaged; an estoppel not being favored by the law, when the same is pleaded, to avail the defendant, it must be clearly proved and established." [The body of the plea referred to was as follows:

"If he at any time damaged plaintiff's lands, as set forth in said suit, said plaintiff and this defendant fully settled and compromised all such damages as were claimed by said plaintiff, before the filing of said suit, and therefore plaintiff has no legal right to prosecute said suit for damages, being debarred and estopped by reason of said settlement and compromise from suing and recovering any damages from this defendant. Defendant says that he and plaintiff entered into the following agreement, by which all damages claimed by plaintiff were settled."

(Then follows a statement of the agreement and a compliance therewith by the defendant. The plea then closes thus:)

"And he therefore says plaintiff is debarred and estopped from prosecuting his said suit for damages; and of this he puts himself on the country."]

(5.) Because the court charged as follows: "In every tort there may be aggravating circumstances, either in the act or in the intention, and in that event the jury may give additional damages either to deter trespass or to compensate the wounded feelings of the plaintiff."

(6.) Because the court charged as follows: "Now, in this case, I charge you, if you find from the evidence that the land of plaintiff has been, by the act of defendant, turning water into Tobesofkee creek, damaged, and if you believe that plaintiff is entitled to recover, then plaintiff would be entitled to recover general damages, and such special damages as the evidence shows he has sustained. Under special damages (you would ascertain what the amount was for each year; if the same has been shown, you will add the same together and return it in one sum as your verdict) would be included the value of the rent of the land that was damaged, before it was damaged; that is to say, what would have been the rental value of the land before it was damaged; then how much has this rental value been reduced, and this would apply to lands over-flowed or to lands which had been seeped with water and rendered unfit for cultivation thereby, if such be the evidence; that is, if such damages were caused by the wrongful act of this defendant."

(7.) Because the court erred in charging the jury that plaintiff "was entitled under the law to general damages . . . if plaintiff were injured by the wrongful act of defendant."—Especially was such charge error, when plaintiff had abandoned that part of his suit which claimed general damages, on the trial of the cause, counsel for plaintiff announcing to the court, in the opening of the case before the jury, that that portion of his declaration would not be read to the jury or insisted upon, the defendant having filed his plea claiming that all general and special damages set

up by plaintiff, prior to four years before the filing of his declaration, were barred by the statute of limitations; and especially was such charge error, in view of the fact that the court declined to give in charge to the jury the law in reference to the statute of limitations, the court having charged the jury as follows: "In this case, I charge you, if you find from the evidence that the land of plaintiff has been, by the act of defendant, turning water into Tobesof-kee creek, damaged, and if you believe plaintiff is entitled to recover, then plaintiff would be entitled to recover general damages and such special damages as the evidence shows he has sustained."

[The judge added the following note to this ground:

"Counsel for plaintiff, at the opening of plaintiff's case, commenced to read to the jury the declaration, and, after reading a page or so, remarked that plaintiff will not insist on general damages, or injury to the land, as set forth in this part of the declaration. Counsel then turned the leaves or sheets of paper to what was termed the second count of the declaration, and read that, and the trial proceeded on that count of the declaration."]

(8.) Because the court permitted the plaintiff, John A. Danielly, and witness, W. F. Harden, and others, to testify, over the objection of defendant, that Cheeves's bottom lands, where Yellow creek ran, were wet, marshy, covered with undergrowth and swamp grass, prior and up to the time of cutting the ditch and building the levee in December, 1875, and also that the same was not in cultivation, and in testifying that said bottoms, since December, 1875, had been very dry, had been cleared up and cultivated, up to the time of the trial, yielding unusually fine crops of corn.—Objected to as irrelevant.

BACON & RUTHERFORD; W. D. STONE; T. B. CABANISS, for plaintiff in error.

JOHN I. HALL; BERNER & TURNER, for defendant.

JACKSON, Chief Justice.

This is an action orought by Danielly *vs.* Cheeves for the recovery of damages alleged to have been done by Cheeves's cutting a ditch, which turned a smaller stream into one larger, bordering on Danielly's, at a point much higher up the bordering stream than it formerly ran into it; and thus by banking sand and filling the bed of this stream with it, and also by pouring and backing sand and water on the plaintiff's land, he had been damaged. The ditch was cut through Cheeves's own land and a consenting neighbor's land, for the purpose of draining Cheeves's bottoms, but was made to enter into the creek or river bordering on Danielly's land higher up than before, and thus he alleged damaged him, by sanding his land and wetting it and otherwise, so as to make it yield a smaller crop.

The jury found a verdict of one thousand dollars for Danielly, and Cheeves excepted to the refusal of a motion for a new trial, and assigns that refusal as error here.

1. We think there should be a new trial on two or three of the grounds of the motion. First, accord and satisfaction was pleaded and relied upon by the defendant; and on the issue, whether or not the terms of the accord had been satisfied, and also in respect to what those terms were, the court applied the doctrine of estoppel, and on the ground that it was not favored by the courts, required a clearer and stronger degree of proof than in ordinary cases in civil proceedings, and charged to the effect that the jury must have clear or very clear evidence of Cheeves's side of the controversy on this issue. In our judgment, the plea, though using in one place the word "estopped," is a plea of accord and satisfaction, and both on the question, did the parties agree on a settlement, and secondly, did Cheeves carry it out, the issue is like ordinary civil issues, and a mere preponderance of the testimony is enough to settle either point

2. We think that the court erred in the charge on gen-

eral damages. It seems that the count for damage to the fee, or permanent damage to the land, was not relied upon, and was virtually withdrawn from the jury, yet the court charged to the effect that they could find general as well as special damage, the count for the latter only being before them. It is possible that the presiding judge may have meant, as argued by counsel, nominal damages, when he used the term general damages; but it certainly was not clear, and may have seriously misled the jury. The charge on the subject, as given in the record, is not as clear and easily understood as those of the able judge who presided usually are.

3. There is another ground on which we think the court went too far in this case, and that is on the subject of aggravating circumstances. The court charged the principle of law laid down in the Code that, "in every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or to compensate the wounded feelings of the plaintiff." Code, §3066. There is no aggravating circumstance here shown in intention; nor is there anything in the act calling for or authorizing the charge. The trespass is not such a one as could well be repeated, and there is no violence in it to wound feelings. It is but an action on the case for damages consequent on the act of one who was draining his own land, and though he may be responsible for actual damage thereby done to his neighbor's property, he is hardly liable for additional damages in such a case.

4. There was no error in admitting evidence to show the productiveness and dryness of the land of plaintiff for many years, and to extend the inquiry far back into the past, so as to show that it had been good for a very long time before the change in Tobesofkee creek, and then only began to fail, and did fail. It is a circumstance bearing on that issue.

5. There was no error in admitting testimony to show that defendant's land was drained of water, and the acreage and extent thereof, in order to show how much more water got into the creek defendant changed, and thence into the large stream, whereby plaintiff alleged he was hurt; but the amount or value of the crop made thereby was hardly admissible. It is damage to his land and crops for which plaintiff sued, and not increased crops and profits made by defendant on his land.

6. We see no error in the fourth and fifth grounds of the motion, objecting to certain charges of the court, to the effect that, if the plaintiff's land was damaged by the water being turned into Tobesofkee creek from the smaller creek sooner than natural causes would have carried it there, though the jury believed eventually it might have gone there any way, there could be a recovery, and if the water turned into Tobesofkee caused the sand to be cast on the plaintiff's land, then he could recover, no matter whence the sand came, unless, in both cases, the evidence shows good reason to the contrary.

The points about jurors, newly discovered evidence, etc , need not be considered, as the case goes back for trial, and it would be fruitless to decide them.

. On the general ground, that the verdict is contrary to law and to evidence, we decline to pass, as the case may develop the facts more fully, and make the law applicable thereto clearer to the court and easier of application.

Judgment reversed.