47298. CITY MOTORS, INC. v. GEORGIA POWER COMPANY.

QUILLIAN, Judge. City Motors, Inc. filed its ejectment suit against Georgia Power Company claiming title to certain land located on the south side of the Epps Bridge Road in the City of Athens, Clarke County, and asking for punitive damages because of the acts of the Georgia Power Company in constructing certain poles, towers, and other appurtenant structures on the property after having been notified that it was not the property of the City of Athens or Georgia Power Company but belonged solely to City Motors, Inc.

The defendant, Georgia Power Company, filed its defensive pleadings claiming that the property on which it had located its power lines was the property of the City of Athens and on the right of way of the City of Athens and Clarke County and that the property did not belong to City Motors, Inc.

The case was divided into three parts, the first being tried

as to whether or not the poles and equipment of Georgia Power Company were on the property of City Motors, Inc. The same resulted in a verdict that the poles, wires, and cross bars of Georgia Power Company were on or above the property of City Motors, Inc.

After this verdict had been made the judgment of the court Georgia Power Company then amended its answer and filed a cross action seeking to condemn a certain stretch of land on the south side of the Epps Bridge Road in Athens, belonging to City Motors, Inc. The condemnation cross action was then tried and a verdict of $6,000 was returned on behalf of City Motors, Inc. against Georgia Power Company and the same was made the judgment of the court.

Georgia Power Company then moved for summary judgment on the issue of punitive damages contending that there was no genuine issue of fact as to punitive damages because of the actions of Georgia Power Company. The appellee's motion for summary judgment as to punitive damages was granted and an appeal was filed. *Held:*

The granting of the summary judgment was not error because the evidence showed that the employees of the appellee had adequate reason to believe that they were locating the equipment within the right of way of the City of Athens. *Ga. R. & Bkg. Co. v. Gardner,* 115 Ga. 954 (42 SE 250).

*Judgment affirmed. Bell, C. J., Hall, P. J., Eberhardt, P. J., Deen and Clark, JJ., concur. Pannell, Evans and Stolz, JJ., dissent.*

SUBMITTED JULY 6, 1972—DECIDED SEPTEMBER 6, 1972— REHEARING DENIED NOVEMBER 2, 1972.

*Guy B. Scott, Jr.,* for appellant.

*Erwin, Epting, Gibson & Chilivis, Eugene A. Epting,* for appellee.

PANNELL, Judge, dissenting. The burden is on the defendant here, in its motion for summary judgment, to affirma-

tively show, with evidence strong enough to demand a finding, that it acted in good faith. The question is not whether the evidence showed bad faith, but whether it affirmatively showed lack of bad faith. Where the party upon whom the burden of proof at the trial does not lie, makes a motion for summary judgment, the burden is upon the movant to affirmatively disprove some essential element in the respondent's claim, and while in some cases the evidence adduced upon the motion may authorize a directed verdict at the trial (because plaintiff respondent failed to prove its case), it does not necessarily follow that a summary judgment, on the defendant's motion based upon the same evidence, is proper. See *Southern Bell Tel. &c. Co. v. Beaver,* 120 Ga. App. 420 (3) (170 SE2d 737) where it was ruled: "It has oft times been held that a motion for summary judgment is analogous to a motion for a directed verdict. The operation of the motions is, then, essentially the same in reference to those issues upon which the movant for summary judgment would have, at trial, the burden of proof. The operation is, however, somewhat different where the motions are made by the opponent of the party with the trial burden. Assume, for example, that the movant is the defendant who is attacking the merits of plaintiff's claim. On motion for directed verdict the party resisting the motion, i.e., the plaintiff, had had to and has presented his evidence, which is then scrutinized by the motion. On motion for summary judgment by a defendant on the ground that plaintiff has no valid claim, the defendant, as the moving party, has the burden of producing evidence, of the necessary certitude, which negatives the opposing party's (plaintiff's) claim. This is true because the burden to show that there is no genuine issue of material fact rests on the party moving for summary judgment whether he or his opponent would at trial have the burden of proof on the issue concerned; and rests on him whether he is by it required to show the existence or nonexistence of facts.' Moore's Federal Practice, Vol. 6 (2d Ed.), par. 56.15[3], pp. 2341-2343. It appears, therefore, that the grant of a summary judg-

ment may be improper where, at the trial, the grant of a directed verdict may be proper. Armco Steel Corp. v. Realty Investment Co., 273 F2d 483." See also *Werbin & Tenenbaum v. Heard,* 121 Ga. App. 147 (2) (173 SE2d 114).

Let us then examine the evidence in the light of this rule. None of the evidence submitted to the jury on the trial of the issue as to where the dividing line lay between the plaintiff's property and the "property of the City of Athens" was before the lower court or is before this court in the present case. The only evidence is the affidavits of the defendant Power Company employees and an affidavit of an officer of the plaintiff corporation, which, eliminating conclusionary statements as to good faith or bad faith, are as follows: Affidavit of Georgia Power Company employees in charge of installing power lines: "At the time of the above transactions deponent and others representing Georgia Power Company had a plat showing the width of Epps Bridge Road to be 35 feet, and the width of the paving and curbing in said road totaled approximately 28 feet, varying in few inches from place to place. A copy of said plat is attached hereto as Exhibit A. Also at such times there was already in existence along and southerly from the southerly curb line of Epps Bridge Road a Southern Bell Telephone & Telegraph Company line and poles. For the reasons stated above, deponent considered that the proposed locations of poles and the places where such poles were later installed were within the right-of-way of Epps Bridge Road, and that there would be no encroachment on property of City Motors, Inc. . . ."

Affidavit of the officer of the plaintiff corporation, Jack W. Morton: "Jack W. Morton informed Joe B. Neighbors as representative of the Georgia Power Company and other employees of the Georgia Power Company that they could not erect any poles or guy wires or place any wires thereon on the property lying south of the curb line of Epps Bridge Road between Hawthorne Avenue and the end of City Motors, Inc. property on the west side thereof. This information was imparted to the said Joe B. Neighbors and other

representatives of the Georgia Power Company on several occasions personally by Jack W. Morton and Jack W. Morton informed said representatives of the Georgia Power Company that they would be sued if they proceeded to place said poles, guy wires, and lines on the property of City Motors, Inc. At no time did Jack W. Morton allow said representatives of the Georgia Power Company to place said poles thereon and in fact he threatened them with coming upon the land but the representatives of the Georgia Power Company came upon the land without any permission. . . and proceeded to . . . place said poles, guy wires, and other fixtures belonging to the Georgia Power Company on the property of the City Motors, Inc. Deponent further states that after said wires and poles were placed on said property that he personally informed Joe B. Neighbors and other representatives of the Georgia Power Company that they must pay City Motors, Inc., for said property but that Georgia Power Company in its officials refused to pay for said property and refused to even answer any correspondence or telephone calls of both deponent or his attorney, Guy B. Scott, Jr. Because of this it was necessary to file suit and employ an attorney at an expense of $2,500." This evidence shows, without dispute, that before any poles were placed, the Power Company was notified that the proposed locations for its poles lay upon the land of the plaintiff. The only excuse offered by the Power Company for placing the poles upon the land of the plaintiff is that they had a plat which showed that the proposed power lines would be within the right-of-way of a city street. The plat referred to was entitled "Georgia Power Co., Atlanta, Ga., Land Department-Hawthorne Ave. 110/12 KV Substation, Topographic Map of Property, 216 TH. G.M. District. Clarke Co., Georgia." The plat was dated December 30, 1965 and approved by J. T. Hammond. A certificate of a registered land surveyor, signed by him and stamped on the plat, reads as follows: "In my opinion, this plat is a correct representation of the land platted and has been prepared to conformity with the minimum standards and requirements of law.

(signed) W. L. Bishop, Member Ga. Assn. Reg. Land Surveyors." No one testified as to the accuracy of this plat and the plat on its face purported to be one made by the land department of the Power Company. No request was made by the Power Company to see any deed of conveyance of the property made to the plaintiff, and so far as the evidence discloses, the Power Company made no further investigation in any manner whatsoever to determine whether the plaintiff or the Power Company was correct as to the location of the line; but the Power Company, solely on the faith of an unproven plat and, further, the fact that the telephone poles were already on the property, and without further investigation assumed the plat was correct and installed the poles upon the lands of the plaintiff and failed and refused to do anything about payments of compensation for the taking until after the suit was filed by the plaintiff, although the requests had been made orally and in writing. No explanation is given for the failure to even answer or reply to these requests. In my opinion, the case is not ripe for summary disposition in favor of the defendant and the trial judge erred in granting the defendant's motion for summary judgment as to punitive damages.

I am authorized to state that Judges Evans and Stolz concur in this dissent.